UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK OLIVIER,

                      Plaintiff,

    v.

COUNTY OF ROCKLAND, ROCKLAND
COUNTY SHERIFF'S DEPARTMENT,

                      Defendants.

No. 15-CV-8337 (KMK)

OPINION & ORDER

Appearances:

Michael H. Sussman, Esq.
Sussman & Watkins
Goshen, NY
*Counsel for Plaintiff*

Robert B. Weissman, Esq.
Saretsky Katz Dranoff & Glass LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

       Plaintiff Frank Olivier ("Plaintiff") brings this Action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 et seq., against Defendants County of Rockland and Rockland County Sheriff's Department ("Defendants") alleging that Defendants engaged in unlawful discrimination against him on the basis of his race. Before the Court is Defendants' Motion To Dismiss. (*See* Dkt. No. 19.) For the reasons to follow, the Motion is granted in part.

I.  Background

A.  Factual Background

Because this case comes before the Court on a Motion To Dismiss, the Court takes as true the facts set forth in Plaintiff's Complaint.

Plaintiff is a black male of Haitian descent who has been employed by Defendants as a correction officer for over 20 years.  (*See* Compl. ¶¶ 1–2 (Dkt. No. 1).)  Defendant Rockland County Sheriff's Department is Plaintiff's direct employer.  (*See id.* ¶ 2.)  The basis of this Action is Plaintiff's allegation that "Defendants have subjected [him] to an ongoing series of racially discriminatory actions which constitute a continuing violation of Title VII."  (*Id.* ¶ 5.)

On June 27, 2013, Defendants "propounded baseless disciplinary charges" against Plaintiff, alleging that he was "passing several objects" to an inmate the day before and interacting with the inmate in an inappropriate and unprofessional manner.  (*Id.* ¶ 7 (internal quotation marks omitted).)  Plaintiff had, in fact, engaged in no inappropriate conduct on that day, nor had he engaged in any conduct that violated the rules promulgated by Defendants.  (*See id.* ¶ 8.)  Defendants had never lodged charges against white officers who engaged in inappropriate conduct at the jail where Plaintiff works.  (*See id.* ¶ 9.)

After these charges were issued against Plaintiff, the chief of the jail claimed that Plaintiff had entered into an agreement allowing Defendants "to abrogate his bid assignment and cost him overtime opportunities."  (*Id.* ¶ 10.)[1]  An arbitrator, however, subsequently determined that Plaintiff never made any such agreement.  (*See id.* ¶ 11.)  Nevertheless, in the summer of 2013, Defendants "violated . . . [P]laintiff's bid without any contractual basis or business

---

[1] Plaintiff has made no effort to explain what a "bid assignment" is.

reason."  (*Id.* ¶ 12.)  Defendants did not behave similarly with respect to similarly-situated white officers.  (*See id.* ¶ 13.)

On September 10, 2013, Defendants charged Plaintiff with another set of disciplinary infractions, this time alleging that Plaintiff had violated the jail's social networking and media sites policy.  (*See id.* ¶ 13A.)[2]  The charge arose from an allegation that Plaintiff appeared on a Facebook page "in uniform carrying a weapon."  (*See id.* (internal quotation marks omitted).)  The charge, however, was without factual basis, and the hearing officer who reviewed the charge on May 28, 2014, concluded that the allegation was baseless and ordered Defendants to pay back the time Plaintiff lost while on unpaid suspension.  (*See id.*)  Defendants have treated white officers charged with similar Facebook violations more leniently than they treated Plaintiff.  (*See id.* ¶ 15.)

On December 26, 2013, Defendants gave Plaintiff a poor evaluation, highlighting issues that no supervisor had raised with Plaintiff before or during the evaluation period.  (*See id.* ¶ 16.)  The next day, December 27, Defendants charged Plaintiff with using leave without pay absent a prior written request several times in 2013: October 30, and December 2, 4, 5, 6, 9, 10, and 11.  (*See id.* ¶ 17.)  Defendants acknowledged that Plaintiff was sick on these days and that Plaintiff called in to work at least one-half hour prior to his scheduled shift on each day.  (*See id.* ¶ 18.)

Additionally, when Defendants brought the charges, they knew that Plaintiff suffered from a "chronic medically verified condition arising from work-related PTSD," and that this condition sometimes rendered him unable to report for duty.  (*See id.* ¶ 19.)  The collective bargaining agreement governing the conduct of the Parties also contained a provision warning

---

[2] Plaintiff uses two paragraphs 13 in his Complaint.  This citation refers to the second paragraph 13.

Defendants against unduly penalizing employees for absences "due to factors of health not within their control." (*Id.* ¶ 20 (internal quotation marks omitted).) Moreover, at the time Plaintiff called into work, he had sufficient leave time available to cover the days. (*See id.* ¶ 21 (internal quotation marks omitted).) The hearing officer who heard the matter determined that the charges were "patently erroneous." (*Id.*)

On April 14, 2014, Defendants lodged more charges against Plaintiff, this time in relation to his participation in a movie. (*See id.* ¶ 22.) According to Plaintiff, Defendants knew about the movie for more than three years before propounding the disciplinary charges, thus making the charges untimely. (*See id.*) As a result of these charges, Defendants suspended Plaintiff for more than 30 days and have never convened a hearing to adjudicate the charges. (*See id.* ¶ 23.) Defendants have not even selected a hearing officer to preside over the hearing. (*See id.* ¶ 27.)

After Defendants suspended Plaintiff without pay following the lodging of the disciplinary charges in April 2014, Plaintiff sought to collect unemployment insurance benefits. (*See id.* ¶ 28.) Although Defendants initially opposed Plaintiff's request, (*see id.* ¶ 30), after Plaintiff showed them evidence suggesting that the chief of the jail had viewed parts of the movie at issue several years before propounding the disciplinary charges, Defendants withdrew their objection to Plaintiff's request for unemployment insurance benefits, (*see id.* ¶¶ 29–30).

Plaintiff further alleges that, apart from the disciplinary charges brought against him, Defendants have "engaged in a continuing set of harassing practices which demonstrate the intentional[ly] racial bias to which they have subjected [P]laintiff." (*Id.* ¶ 31.) Specifically, Plaintiff alleges that:

(1) In June 2013, Defendants assigned Plaintiff to work in the unit of an inmate whom Plaintiff had shot during an escape attempt in 1995 and with whom Defendants knew Plaintiff could not have contact, (*see id.* ¶ 31(a));

(2) Defendants suspended Plaintiff without pay and barred him from entering the jail while his disciplinary charges were pending, even though Plaintiff did not pose a threat to the jail's operations, (*see id.* ¶ 31(b));

(3) Defendants have suborned the making of false statements by "Chief Volpe" against Plaintiff, including statements related to Plaintiff's participation in the movie in which he appeared, (*see id.* ¶ 31(c));[3] and

(4) After the filing of Plaintiff's EEOC charge in connection with this suit, Defendants served another set of baseless charges on Plaintiff, (*see id.* ¶ 31(d)).

Plaintiff also offers allegations regarding the treatment of similarly-situated white officers. Plaintiff alleges, for instance, that one white officer, whom supervisors knew had brought contraband into the jail, was promoted to sergeant. (*See id.* ¶ 33.) Additionally, several white officers have taken time off when they did not have leave, and did so without following the applicable procedures. (*See id.* ¶ 34.) And while other white officers were permitted to work "overtime" while suspended, Plaintiff was never given a similar opportunity. (*See id.* ¶ 35.) None of the white correction officers has been charged in the same way Defendants have disciplined Plaintiff. (*See id.* ¶ 36.)

---

[3] Though Plaintiff does not explain who "Chief Volpe" is, the Court assumes this refers to the chief of the jail in which Plaintiff works.

As a result of this "continuing pattern of racial discrimination to which [Plaintiff] has been subject," Plaintiff's PTSD has been exacerbated, and has worsened with each new act of discrimination.  (*See id.* ¶ 37.)

B.  Procedural History

Plaintiff filed his Complaint on October 22, 2015.  (*See* Dkt. No. 1.)  On December 26, 2015, Defendants requested leave to file a Motion To Dismiss.  (*See* Letter from Robert B. Weissman, Esq., to Court (Dec. 26, 2015) (Dkt. No. 12).)  Plaintiff responded two days later. (*See* Letter from Michael H. Sussman, Esq., to Court (Dec. 28, 2015) (Dkt. No. 13).)  On February 3, 2016, the Court approved the proposed schedule for the Motion.  (*See* Memo Endorsement (Dkt. No. 18).)  Defendants filed their Motion To Dismiss and accompanying papers on March 1, 2016.  (*See* Dkt. Nos. 19–21.)  Plaintiff filed his opposition on April 1, 2016. (*See* Dkt. No. 22.)  Pursuant to Plaintiff's request regarding the redaction of certain private information, Defendants refiled their Declaration in support of the Motion on April 8, 2016.  (*See* Dkt. No. 26.)  Defendants filed their reply brief on April 15, 2016.  (*See* Dkt. No. 27.)

II.  Discussion

A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked

6

assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)

(internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  The Court thus draws the pertinent facts from the Complaint and the documents appended to the Complaint.  *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).  Here, that includes the complaints filed by Plaintiff with the EEOC.

    B.  Analysis

The chief issue in this Motion is whether Plaintiff has adequately pleaded a continuing violation of Title VII such that all of his claims are timely.  Accordingly, the Court will first examine whether Plaintiff's claims are timely before examining the remaining issues.

        1.  Timeliness of Pre-January 21, 2014 Claims

"An aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004); *see also* 42 U.S.C. § 2000e-5(e).  "[A] claim of employment discrimination accrues for statute of limitations purposes on the date the employee learns of the employer's discriminatory conduct."  *Flaherty v. Metromail Corp.*, 235 F.3d 133, 137 (2d Cir. 2000).

Plaintiff filed his initial complaint with the EEOC on November 17, 2014.  (*See* Decl. of Robert B. Weissman ("Weissman Decl.") Ex. A (Dkt. No. 26).)  Defendants argue that any claims for discrimination that accrued prior to January 21, 2014 are therefore time-barred.  (*See* Mem. of Law in Supp. of Defs.' Mot. To Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Defs.' Mem.") 3 (Dkt. No. 21).)  Plaintiff does not dispute this basic point, but instead argues that under the continuing violation doctrine, Plaintiff's claims arising prior to January 21, 2014 may be considered because they are part of a continuing practice and policy of discrimination, and at

8

least one of the discriminatory acts accrued after January 21, 2014.  (*See* Mem. of Law in Opp'n to Defs.' Mot. To Dismiss ("Pl.'s Opp'n") 7 (Dkt. No. 22).)

Under federal law, a claim ordinarily accrues when the "plaintiff knows or has reason to know of the injury which is the basis of his action."  *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994).  "When a plaintiff experiences a 'continuous practice and policy of discrimination,' however, 'the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'"  *Id.* (some internal quotation marks omitted) (quoting *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir. 1992)).  Thus,

> [w]hile discrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation, a continuing violation may be found where there is proof of specific ongoing discriminatory polic[i]es or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.

*Id.* at 704 (citation omitted).  The Supreme Court has clarified that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002), and that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice,'" *id.* at 114.  Accordingly, "an allegation of an ongoing discriminatory policy does not extend the statute of limitations where the individual effects of the policy that give rise to the claim are merely discrete acts."  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012).

Here, with the exception of the pending disciplinary charge filed on April 14, 2014 and the allegedly "baseless charges" propounded on Plaintiff after he filed his first EEOC charge, all of the allegedly discriminatory acts occurred prior to January 21, 2014.  Plaintiff, apparently in anticipation of Defendants' argument, has peppered his Complaint with allegations that, among

9

other things, "[D]efendants have engaged in a pattern and practice of racial discrimination," (Compl. ¶ 3), "Defendants have subjected [P]laintiff to an ongoing series of racially discriminatory actions which constitute a continuing violation of Title VII," (*id.* ¶ 5), and "[D]efendants have engaged in a continuing set of harassing practices which demonstrate the intentional[ly] racial bias to which they have subjected [P]laintiff," (*id.* ¶ 31; *see also id.* ¶¶ 6, 12, 16, 39). However, as general allegations of an "ongoing discriminatory policy" do not suffice to invoke the continuing violation doctrine where the "individual effects of the policy that give rise to the claim are merely discrete acts," *Chin*, 685 F.3d at 157, the Court must examine the specific factual allegations to determine whether Plaintiff has pleaded facts sufficient to invoke the continuing violation doctrine, *see also Emmons v. City Univ. of N.Y.*, 715 F. Supp. 2d 394, 412 (E.D.N.Y. 2010) ("Mere allegation of . . . a continuing practice does not guarantee a clear path.").

Plaintiff's allegations relate largely to disciplinary charges brought against him on June 27, 2013, September 10, 2013, and December 27, 2013, as well as a poor evaluation given to Plaintiff on December 26, 2013. Courts in the Second Circuit are in agreement that disciplinary actions against employees and negative employee evaluations are discrete acts that do not constitute a continuing violation. *See Yang v. Dep't of Educ. of the City of N.Y.*, No. 14-CV-7037, 2016 WL 4028131, at *5 (E.D.N.Y. July 26, 2016) ("The [c]ourt agrees with [the] [d]efendant that the negative evaluations issued prior to February 26, 2013, cannot each serve as the basis for a separate Title VII claim. Unsatisfactory ratings and negative evaluations are discrete acts."); *Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120, 134 (E.D.N.Y. 2013) ("[The] [p]laintiff alleges that Hispanic officers were routinely denied promotions, subjected to disparate discipline, and denied transfer opportunities. These are all discrete acts of

10

discrimination and each incident constitutes a separate actionable unlawful employment practice." (citation and internal quotation marks omitted)); *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 250 (E.D.N.Y. 2012) (declining to apply the continuing violation doctrine to "disciplinary letters issued to [the] plaintiff during the 2007–2008 and 2008–2009 school years"), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *see also Valtchev v. City of New York*, 400 F. App'x 586, 589 (2d Cir. 2010) ("[The plaintiff] ultimately raises only failure to promote claims and discrete instances of retaliatory action, such as negative evaluations, that do not trigger the continuing violation exception."). These cases are consistent with the general principle that "[t]he continuing violation doctrine only 'allows the inclusion of action whose discriminatory character was not apparent at the time they occurred,' and 'is not intended to allow employees a second chance to bring stale claims once the statute of limitations has passed.'" *Emmons*, 715 F. Supp. 2d at 412 (alteration omitted) (quoting *Warren v. N. Shore Univ. Hosp. at Forest Hills*, No. 03-CV-19, 2006 WL 2844259, at *5 (E.D.N.Y. Sept. 29, 2006)); *see also Oyelola v. Hartford Fin. Servs. Grp., Inc.*, No. 13-CV-1685, 2014 WL 496880, at *9 (D. Conn. Feb. 5, 2014) ("[The plaintiff's] allegations of being under-compensated, demoted, retaliated against, forced to work excessive hours, and denied benefits all involve discrete acts of discrimination.").

Courts are thus uniform in holding that disciplinary acts and negative evaluations, like those alleged here, are "discrete acts of discrimination" that do not suffice to invoke the continuing violation doctrine. *Pietri*, 936 F. Supp. 2d at 134. The Court thus has little trouble concluding, as all other courts considering similar allegations have, that the allegations raised here are not of the kind that warrant application of the continuing violation doctrine. *See, e.g.*, *Rogers v. Fashion Inst. of Tech.*, No. 14-CV-6420, 2016 WL 889590, at *1, *3–4 & n.5 (S.D.N.Y. Feb. 26, 2016) (holding that the continuing violation doctrine did not apply to

allegations that the plaintiff was "subject[] to . . . various forms of inequitable treatment on the basis of his race," such as being "placed on probation" in "a manner inconsistent with [the defendant's] standard practice," and noting that "courts have routinely found acts of the variety that [the] [p]laintiff allege[d] . . . to be discrete"); *Consoli v. St. Mary Home/Mercy Cmty. Health*, No. 13-CV-1791, 2014 WL 3849978, at *3 (D. Conn. Aug. 5, 2014) (holding that the continuing violation doctrine did not apply to allegations that the plaintiff "was denied overtime on the basis of her age, and that when she complained about her colleague's age-related comments, she was subjected to a series of false disciplines on the basis of her age and in retaliation for her complaints").[4]  That conclusion is reinforced by the fact that the time the allegedly discriminatory acts took place, the "discriminatory character" of those acts was undoubtedly "apparent" to Plaintiff. *Emmons*, 715 F. Supp. 2d at 412 (internal quotation marks omitted).

In opposition, Plaintiff relies on *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), wherein the Supreme Court found that the plaintiffs had timely stated claims under the Fair Housing Act, even though many of the specific incidents of housing discrimination happened outside of the statute of limitations, holding that "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." *Id.* at 380–81 (footnote omitted).  Plaintiff's invocation of *Havens* is somewhat perplexing, however, as the Supreme Court made special note that "a 'continuing violation' of the Fair Housing Act should be treated differently from one

---

[4] To the extent Plaintiff suggests that his assignment in June 2013 to a unit in which an inmate he had shot during an escape attempt was housed was a discriminatory act, Plaintiff has not alleged that other officers were treated differently in this respect.

12

discrete act of discrimination." *Id.* at 380. The Court thus distinguished claims for continuing violations under the Fair Housing Act from "discrete act[s] of discrimination." Plaintiff's citation to *Havens* thus begs the question of whether the allegations here are "discrete act[s] of discrimination" that do not merit invocation of the continuing violation doctrine. In light of the Supreme Court's careful limitation on the scope of the holding, the Court does not see how *Havens* supports Plaintiff's claim here.

Plaintiff also cites to the Supreme Court's statement in *Morgan* that "[h]ostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." 536 U.S. at 115. Plaintiff seems to conflate claims for disparate treatment and claims for hostile work environment: these are two separate claims under Title VII. *See Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002). The continuing violation can apply to a claim for disparate treatment, as the doctrine states that "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin*, 685 F.3d at 155–56. Separately, however, the doctrine also applies to claims for hostile work environment because such claims do not involve allegations of "incident[s] of discrimination in furtherance of an ongoing policy of discrimination"; indeed, that was the very point made by the Supreme Court in *Morgan*, as hostile work environment claims involve an unlawful employment practice that "occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." 536 U.S. at 115.[5] Courts have recognized that hostile work

---

[5] That is not to say, however, that when a plaintiff alleges a hostile environment claim, the continuing violation doctrine serves to rope in every allegedly hostile act—the court must "determine whether the acts about which an employee complains are part of the same actionable

13

environment claims, and their timeliness, must be analyzed separately from claims for disparate treatment. *See, e.g.*, *Rogers*, 2016 WL 889590, at *4 (holding that the plaintiff's claims for disparate treatment were largely time-barred, but concluding that "[i]n any event, because [the] [p]laintiff alleges that all these acts contributed to a single hostile work environment, the [c]ourt will assess the viability of the hostile work environment claim using the full scope of conduct alleged"); *Sotomayor*, 862 F. Supp. 2d at 250–51 (holding that the continuing violation doctrine did not salvage a claim for discrimination arising out of "disciplinary letters . . . ; formal and informal observations of [the] plaintiff . . . ; [and the] plaintiff's assignments," but separately concluding that "[b]ecause some of the allegedly discriminatory conduct occurred after July 26, 2009, all of the discriminatory acts alleged may be considered timely for the purpose of [the] plaintiff's state law hostile work environment claim"); *cf. Consoli*, 2014 WL 3849978, at *3 n.5 (acknowledging that the Supreme Court has "held that hostile work environment claims were different in kind from discrete retaliation or discrimination claims," but declining to analyze the claims under the hostile work environment standard because the "[p]laintiff's counsel acknowledged at oral argument that the [a]mended [c]omplaint makes no reference to a hostile work environment claim").

     A plain reading of the Complaint, and of the bulk of Plaintiff's brief in opposition, suggests that Plaintiff's claim is one for disparate treatment, that is, he was treated differently from his non-minority coworkers and suffered adverse employment actions as a result. If Plaintiff intended to also state a hostile work environment claim, he has fallen short in that effort. To state a hostile work environment claim, a plaintiff must allege (1) "that the harassment was

---

hostile work environment practice." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 76 (2d Cir. 2010).

'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,'" and (2) "that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano*, 294 F.3d at 373 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Id.* A hostile work environment claim has both an objective and a subjective element: "the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotation marks omitted).

Plaintiff has not even attempted to plead the elements of a hostile work environment claim. There is no allegation, for example, the Plaintiff perceived his work environment to be "hostile" or "abusive." Plaintiff's belated invocation of the law governing hostile work environment claims in his opposition papers, (*see* Pl.'s Opp'n 10), is thus insufficient to establish the timeliness of his disparate treatment claims, *see Ben-Levy v. Bloomberg L.P.*, No. 11-CV-1554, 2012 WL 2477685, at *5 (S.D.N.Y. June 26, 2012) ("Here, [the] plaintiff alleges that [the] defendants' actions subjected him to a hostile work environment. However, this cannot save [the] plaintiff's claims from their respective statutes of limitations—'the plaintiff cannot piggyback the discrete adverse acts about which he complains onto hostile work environment in order to make them actionable.'" (alteration omitted) (quoting *Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009)), *aff'd*, 518 F. App'x 17 (2d Cir. 2013). However, because Plaintiff has not yet amended his Complaint, and because he has

15

expressed an intent to state a hostile work environment claim, the Court will permit Plaintiff to file an Amended Complaint setting forth a hostile work environment claim.

Defendants' Motion is therefore granted with respect to Plaintiff's claim for disparate treatment for acts occurring prior to January 21, 2014. Plaintiff, however, will be given leave to amend to include a claim for hostile work environment.

### 2. Retaliation Claim

Plaintiff argues in his opposition brief that he has pleaded "a viable claim for unlawful retaliation" under Title VII. (*See* Pl.'s Opp'n 19.) In reply, Defendants argue that the "Complaint contains no such claim." (Reply Mem. of Law in Supp. of Defs.' Mot. To Dismiss Pursuant to F.R.C.P. 12(b)(6) 4 (Dkt. No. 27).) The Court agrees with Defendants.

To state a claim for unlawful retaliation under Title VII, a plaintiff must allege that "(1) []he engaged in a protected activity; (2) [his] employer was aware of this activity; (3) the employer took adverse employment action against [him]; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (internal quotation marks omitted). Plaintiff's only allegation that could be construed as raising a claim for retaliation is his claim that "apart from these four sets of charges and following [P]laintiff's filing of this EEOC charge, [D]efendants served another baseless set of charges upon [P]laintiff." (Compl. ¶ 31(d).) Plaintiff has thus not alleged that Defendants were aware of the EEOC charge or that a causal connection exists between the alleged adverse action and the protected activity. The elements of a retaliation claim do not set a high bar for plaintiffs, but the Court is not inclined to allow Plaintiff, who is represented by counsel, to effectively amend his Complaint through his opposition papers. *See CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*, No. 12-CV-1865, 2013 WL 1209116, at *2 (E.D.N.Y. Mar.

25, 2013) ("[A party] cannot use its opposition brief to amend its allegation."); *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in [the Second Circuit] that parties cannot amend their pleadings through issues raised solely in their briefs."), *aff'd*, 157 F. App'x 398 (2d Cir. 2005). Without passing on their sufficiency, the Court notes that Plaintiff included many more detailed allegations pertaining to Defendants' alleged retaliation in his supplemental charge to the EEOC. (*See* Weissman Decl. Ex. A.) Plaintiff will therefore be given leave to amend his Complaint to include any allegations regarding retaliation by Defendants.

### 3. Punitive Damages

Finally, Defendants move to dismiss any claim for punitive damages against the County of Rockland on the ground that municipalities are immune from claims for punitive damages. (*See* Defs.' Mem. 7.) Plaintiff has not disputed this portion of Defendants' Motion, and the law is clear that municipal defendants, such as the County of Rockland, may not be held liable for punitive damages under Title VII. *See Cross v. N.Y.C. Transit Auth.*, 417 F.3d 241, 254, 256–57 (2d Cir. 2005) (acknowledging the general rule that "no punitive damages are allowed [against municipalities] unless expressly authorized by statute," and noting that "government entities are exempted from the punitive damages provision of Title VII" (internal quotation marks omitted)); *see also* 42 U.S.C. § 1981a(b)(1). Accordingly, to the extent Plaintiff seeks punitive damages against the County of Rockland, that claim must be dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion is granted with respect to those claims related to acts occurring before January 21, 2014. Plaintiff's claim for the disciplinary charge propounded on April 14, 2014 is unaffected by this Order.[6] Should Plaintiff wish to assert claims for hostile work environment or retaliation, he may file an Amended Complaint within 30 days of the date of this Order, or alert the Court within 30 days that he does not intend to file an Amended Complaint. The Clerk of Court is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 19.)

SO ORDERED.

DATED:   March 8, 2017
         White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[6] Although Defendants initially moved to dismiss this claim as well, they withdrew that request in their reply brief.