UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FRANK OLIVIER,

                        Plaintiff,

    v.

COUNTY OF ROCKLAND and
ROCKLAND COUNTY SHERIFF'S
DEPARTMENT,

                        Defendants.

No. 15-CV-8337 (KMK)

OPINION & ORDER

Appearances:

Michael H. Sussman, Esq.
Sussman & Watkins
Goshen, NY
*Counsel for Plaintiff*

Robert B. Weissman, Esq.
Saretsky Katz Dranoff & Glass LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

      Plaintiff Frank Olivier ("Plaintiff") brings this Action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5 *et seq.*, against Defendants County of Rockland and Rockland County Sheriff's Department ("Defendants") alleging that Defendants engaged in unlawful discrimination against him on the basis of his race and created a hostile work environment. Before the Court is Defendants' Motion To Dismiss Plaintiff's hostile work

environment and disparate treatment claims.[1]  (*See* Dkt. No. 40.)  For the reasons to follow, the Motion is granted.

## I.  Background

### A.  Factual Background

In considering the Motion To Dismiss, the Court takes as true the facts set forth in Plaintiff's Amended Complaint.

Plaintiff is a black male of Haitian descent who has been employed by Defendants as a correction officer for over 20 years.  (*See* Am. Compl. ¶¶ 1–2 (Dkt. No. 29).)  Plaintiff generally alleges that "[D]efendants have engaged in a pattern and practice of racial discrimination creating a hostile work environment, engaged in disparate treatment on the basis of his race[,] and retaliated against him for his filing of an EEOC charge in November 2014."  (*Id.* ¶ 3.)

On June 27, 2013, Defendants "propounded baseless disciplinary charges" against Plaintiff, alleging that he was "passing several objects" to an inmate the day before and interacting with the inmate in an inappropriate and unprofessional manner.  (*Id.* ¶ 9 (internal quotation marks omitted).)  As a result of these charges, Defendants removed Plaintiff from his post, assigned him to "random posts in contravention of his seniority," and revoked his ability to work overtime.  (*Id.* ¶ 11.)  In fact, Plaintiff had not engaged in any inappropriate conduct on that day, nor had he engaged in any conduct that violated the rules promulgated by Defendants.  (*See id.* ¶ 13.)  According to Plaintiff, Defendants had never lodged charges against white officers who engaged in inappropriate contact with inmates at the jail where Plaintiff works.  (*See id.* ¶ 14.)

---

[1] Defendants have not moved to dismiss Plaintiff's retaliation claim related to his termination upon filing charges with the EEOC.  Accordingly, this Opinion and Order has no impact on that claim.

After these charges were issued against Plaintiff, the chief of the jail claimed that Plaintiff had entered into an agreement allowing Defendants "to abrogate his bid assignment and deprive him[] of overtime opportunities." (*Id.* ¶ 15.) An arbitrator, however, subsequently determined that Plaintiff never made any such agreement. (*See id.* ¶ 16.)

On September 10, 2013, Defendants charged Plaintiff with another set of disciplinary infractions, this time alleging that Plaintiff had violated the jail's social networking and media sites policy by appearing on a Facebook page "in uniform carrying a weapon." (*Id.* ¶ 17 (internal quotation marks omitted).) The charge, however, was without factual basis, and the hearing officer who reviewed the charge on May 28, 2014, concluded that the allegation was baseless and ordered Defendants to pay back the time Plaintiff lost while on unpaid suspension. (*See id.* ¶ 18.) Defendants have treated white officers charged with similar Facebook violations more leniently than they treated Plaintiff. (*See id.* ¶ 19.) At the end of the year, on December 26, 2013, Defendants gave Plaintiff a poor evaluation, highlighting issues that no supervisor had raised with Plaintiff before or during the evaluation period. (*See id.* ¶ 21.)

On April 14, 2014, Defendants lodged more charges against Plaintiff, this time related to his participation in a movie. (*See id.* ¶ 22.) According to Plaintiff, Defendants knew about the movie for more than three years before propounding the disciplinary charges, thus making the charges untimely. (*See id.*) As a result of these charges, Defendants suspended Plaintiff for more than 30 days and refused to allow him to return to work. (*See id.* ¶ 23.) By the time Plaintiff filed his EEOC charge, Defendants had failed to convene a hearing to adjudicate the charges. (*See id.* ¶ 26.) As of the filing of the Amended Complaint, Plaintiff has not had a hearing on these charges and Defendants have not even selected a hearing officer to preside over the hearing. (*See id.*)

Plaintiff further alleges that, apart from the disciplinary charges brought against him, Defendants have "engaged in a continuing set of harassing practices which demonstrate the intentional[ly] racial bias to which they have subjected [P]laintiff." (*Id.* ¶ 27.) Specifically, Plaintiff alleges that:

(1) In June 2013, "Defendants' agents" assigned Plaintiff to work in the unit of an inmate whom Plaintiff had shot during an escape attempt in 1995 and with whom "the employer" knew Plaintiff could not have contact, (*see id.* ¶ 27(a));

(2) Defendants suspended Plaintiff without pay and barred him from entering the jail while his disciplinary charges were pending, even though Plaintiff did not pose a threat to the jail's operations, (*see id.* ¶ 27(b));

(3) After the filing of Plaintiff's EEOC charge in connection with this suit, Defendants served another set of baseless charges on Plaintiff, claiming that he "called in sick and took leave without pay," (*id.* ¶ 27(c)).

As a result of the "creation of this hostile work environment," Plaintiff's PTSD and emotional stress have been exacerbated, resulting in him seeking "disability-based retirement." (*See id.* ¶ 28.)

Defendants received notice of Plaintiff's EEOC charge on November 17, 2014. (*See id.* ¶ 29.) Thereafter, Plaintiff alleges that the "[s]heriff and/or his delegee" took several retaliatory acts against Plaintiff. (*Id.*) Specifically, Plaintiff alleges that despite his medical excusal from work, he was ordered to return to work by January 17, 2015. (*See id.* ¶ 29(a).) Plaintiff informed the sheriff via a medical note that "he was unable to resume his position." (*Id.* ¶ 29(b).) Rather than allowing Plaintiff to utilize his "useable, accrued time," Defendants suspended Plaintiff's salary and subsequently "abolished [P]laintiff's position." (*Id.* ¶ 29(c–e).)

B. Procedural History

Plaintiff filed his Complaint on October 22, 2015. (*See* Compl. (Dkt. No. 1)).) Defendants filed their Motion To Dismiss and accompanying papers on March 1, 2016. (*See* Dkt. Nos. 19–21.) Plaintiff filed his opposition on April 1, 2016. (*See* Dkt. No. 22.) Pursuant to Plaintiff's request regarding the redaction of certain private information, Defendants refiled their Declaration in support of the Motion on April 8, 2016. (*See* Dkt. No. 26.) Defendants filed their reply brief on April 15, 2016. (*See* Dkt. No. 27.)

On March 8, 2017, the Court issued an Opinion and Order (the "Opinion") granting Defendants' Motion To Dismiss the Complaint with respect to those claims related to acts occurring before January 21, 2014. (*See* March 8, 2017 Opinion & Order ("Opinion") 18 (Dkt. No. 28).) The Court's dismissal was without prejudice and provided Plaintiff 30 days to file a Third Amended Complaint. (*Id.*) The Court construed Plaintiff's claim as being one for disparate treatment, and as far as he intended to state a hostile work environment claim, he had fallen short. (*See id.* at 14–16.) The Court also noted that Plaintiff's opposition brief was the first instance where Plaintiff made a retaliation claim under Title VII, and thus allowed Plaintiff to amend his Complaint to properly assert that claim. (*See id.* at 16–17.)

Plaintiff filed his Amended Complaint on April 7, 2017. (*See* Am. Compl.) Pursuant to a briefing schedule ordered by the Court on June 1, 2017, (*see* Mot. Scheduling Order (Dkt. No. 34)), Defendants filed the Motion To Dismiss the hostile work environment and disparate treatment claims, along with accompanying papers, on June 30, 2017, (*see* Dkt. Nos. 40–42). Plaintiff filed a memorandum in opposition to the Motion on August 1, 2017. (*See* Pl.'s Brief in Opp'n to Defendants' Mot. To Dismiss FAC ("Pl.'s Opp'n") (Dkt. No. 43).) On August 14,

2017, Defendant filed his Reply. (*See* Defs.' Reply in Supp. of Mot. To Dismiss ("Defs.' Reply") (Dkt. No. 44).)

II. Discussion

A. Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and internal quotation marks omitted). Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and internal quotation marks omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P.

6

8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

### B. Analysis

#### 1. Hostile Work Environment Claims

Plaintiff's Amended Complaint appears to rehash— at times in a verbatim fashion—the same time-barred disparate treatment allegations presented in his initial Complaint by rebranding the exact same acts as now amounting to a hostile work environment. (*Compare* Compl. ¶¶ 7–13 *with* Am. Compl. ¶¶ 9–16 (discussing the June 27, 2013 charges brought against Plaintiff regarding inappropriate interactions with an inmate); *compare* Compl. ¶¶ 13–15 *with* Am. Compl. ¶¶ 17–20 (discussing the September 10, 2013 charges brought against Plaintiff regarding the social media policy); *compare* Compl. ¶ 16 *with* Am. Compl. ¶ 21 (discussing Plaintiff's poor evaluation on December 26, 2013); *compare* Compl. ¶¶ 22–30 *with* Am. Compl. ¶¶ 22–26

7

(discussing the April 14, 2014 charges related to Plaintiff's participation in a movie); *compare* Compl. ¶ 31(a–b), (d) *with* Am. Compl. ¶ 27 (a–c) (discussing the additional "continuing set of harassing practices . . . demonstrate[ing] . . . intentional[ly] racial bias," against Plaintiff).)² As the Court previously made clear, Plaintiff's disparate treatment allegations and hostile work environment allegations constitute "two separate claims under Title VII." *Olivier v. County of Rockland*, No. 15-CV-8337, 2017 WL 934711, at * 6 (S.D.N.Y. March 8, 2017) (citing *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002)). To the extent that Plaintiff now alleges that these discrete acts are, in combination, so severe or pervasive to constitute a hostile work environment, he has again fallen short.

To establish a hostile work environment claim, Plaintiff must produce evidence that "the workplace was permeated with discriminatory intimidation, ridicule, and insult, that was sufficiently severe or pervasive to alter the conditions of the victim's employment." *Patterson v. County of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004) (alterations and internal quotation marks omitted). In general, the actions taken by the defendant "must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). The test for determining whether a workplace is a hostile work environment has both subjective and objective elements. *See id.* "[T]he misconduct shown must be 'severe or

---

² There are also numerous examples of Plaintiff copying the allegations in the Amended Complaint directly from his Complaint, but simply adding the term "hostile." For example, in his Complaint, Plaintiff alleged that "[o]n December 26, 2013, as part of the continuing pattern of racial discrimination, [D]efendants provided [P]laintiff with a poor evaluation, focusing on matters which no superior had ever raised with [P]laintiff." (Compl. ¶ 16.) Plaintiff makes this same argument, but instead of alleging a "continuing pattern of racial discrimination," he now states that this poor evaluation "contributed to [P]laintiff's reasonably-held belief that his work environment was hostile." (Am. Compl. ¶ 21.)

pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Id.* (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

When determining whether an objectively hostile work environment exists, courts must consider the totality of the circumstances, including the frequency, severity, and offensiveness of the allegedly discriminatory conduct, whether the conduct was physically threatening or humiliating, and whether the conduct unreasonably interfered with an employee's work performance. *See Patterson*, 375 F.3d at 227. The Second Circuit "treats the first two of these factors—the frequency and the severity of the misconduct—as the principal focus of the analysis." *Aulicino v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 82 (2d Cir. 2009). "Core hostile work environment cases involve misconduct that is both frequent and severe, for example, when a supervisor utters blatant racial epithets on a regular if not constant basis and behaves in a physically threatening manner." *Id.* (internal quotation marks omitted). Finally, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Richards v. N.Y.C. Dep't of Educ.*, No. 13-CV-16, 2015 WL 4164746, at *10 (S.D.N.Y. July 10, 2015) (internal quotation marks omitted).

As a threshold matter, Defendants argue that Plaintiff's hostile work environment claim fails because it is premised on time-barred discrete acts. (Defs.' Mem. in Supp. of Mot. To Dismiss ("Defs.' Mem.") 6–8 (Dkt. No. 42).) Specifically, Defendants take issue with Plaintiff's reliance upon the June 27, 2013 disciplinary charges and work assignments, the September 10, 2013 disciplinary charges, and the December 26, 2013 evaluation. (*See id.* 6–7.) The Court has previously ruled that all discrete acts occurring prior to prior to January 21, 2014 are time-barred. *See Olivier*, 2017 WL 934711, at *5–7. To the extent Plaintiff now argues that these actions are

timely under the "continuing violation" exception to Title VII, (Pl.'s Opp'n 7–9), that doctrine is again inapplicable for many of the same reasons as the Court discussed in its prior Opinion. *See Olivier*, 2017 WL 934711, at *5–7. However, the Court will address the timeliness issue in the context of Plaintiff's use of discrete acts repackaged as a hostile work environment claim.

"A claim of hostile work environment is timely so long as one act contributing to the claim occurred within the statutory period; if it did, 'the entire time period of the hostile environment may be considered by a court for purposes of determining liability.'" *Patterson,* 375 F.3d at 220 (quoting *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002)). The allegedly discriminatory acts occurring within the statutory period are the April 14, 2014 disciplinary charges, and the undated fourth set of charges brought afterward, which resulted in Plaintiff's suspension. (*See* Am. Compl. ¶¶ 22, 27(c), 29(e).) Plaintiff alleges that these disciplinary charges and his suspension were part of an "ongoing series of racially discriminatory actions, creating a hostile work environment on the basis of his race," (*id*. ¶ 6), specifically referencing the June 27, 2013 disciplinary charges, the September 10, 2013 disciplinary charges, and the December 26, 2013 evaluation.

However, Title VII "precludes recovery for *discrete* acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period." *Patterson*, 375 F.3d at 220 (internal quotation marks omitted). Here, Plaintiff has pointed exclusively to discrete actions taken by Defendants and their agents, including the decisions of his superiors to discipline him for what he alleges are "baseless disciplinary charges," (*id.* ¶ 9), and that white employees were not subject to the same charges, (*see id.* ¶¶ 14, 19). Yet, such actions would only constitute, "discrete, adverse employment decisions concerning promotions, discipline, and appraisal, and about employer criticism."

*Magadia v. Napolitano*, No. 06-CV-14386, 2009 WL 510739, at *17 (S.D.N.Y. Feb. 26, 2009). Ultimately, hostile work environment is not the proper vehicle for such claims. *See Nat'l R.R.*, 536 U.S. at 115 ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeat conduct."); *see also De La Pena v. Metropolitan Life Insurance Co.,* 552 F. App'x 98, 99, (2d Cir. 2014) (holding that hostile work environment allegations that "amount to discrete incidents unrelated to an identifiable policy or practice . . . [do not] ordinarily amount to a continuing violation") (internal quotation marks omitted). Therefore, Plaintiff has failed in his effort to repackage his time-barred disparate treatment claims into claims of a hostile work environment. *See Ben-Levy v. Bloomberg L.P.*, No. 11-CV-1554, 2012 WL 2477685, at *5 (S.D.N.Y. June 26, 2012) ("Here, [the] plaintiff alleges that [the] defendants' actions subjected him to a hostile work environment. However, this cannot save [the] plaintiff's claims from their respective statutes of limitations—'the plaintiff cannot piggyback the discrete adverse acts about which he complains onto hostile work environment in order to make them actionable.'" (alteration omitted) (quoting *Magadia*, 2009 WL 510739, at *17)), *aff'd*, 518 F. App'x 17 (2d Cir. 2013).

Defendants' Motion is therefore granted with respect to Plaintiff's claim for hostile work environment.

### 2. Disparate Treatment Claim

Plaintiff's Amended Complaint alleges that Defendants discriminated against him based on his race on April 14, 2014 by "lodg[ing] [disciplinary] charges against . . . [P]laintiff . . . relating to his participation in a movie which [D]efendants knew about for more than three years before propounding [the] disciplinary charges." (Am. Compl. ¶ 22.) According to Plaintiff, these charges resulted in his suspension without pay for 30 days, after which Defendants

"refused to allow him to return to work." (*Id.* ¶ 23.) To date, Plaintiff has not had a hearing on these charges and Defendants have not even selected a hearing officer to preside over the hearing. (*See id.* ¶ 26.)

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on such a claim under Title VII in the absence of direct evidence of discrimination, a plaintiff usually must satisfy the *McDonnell Douglas* three-part burden-shifting test. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of making out a prima facie case of discrimination. *See Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). To state a prima facie case of discrimination under Title VII, a plaintiff "must show: (1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008); *see also Dickens v. Hudson Sheraton Corp., LLC*, 167 F. Supp. 3d 499, 519 (S.D.N.Y. 2016) (same), *aff'd*, 689 F. App'x 670 (2d Cir. 2017). If the plaintiff states a prima facie case, "the burden shifts to the defendant to articulate 'some legitimate, non-discriminatory reason' for its action." *Holcomb*, 521 F.3d at 138 (quoting *McDonnell Douglas*, 411 U.S. at 802); *see also Abdu–Brisson*, 239 F.3d at 468 (same). "If such a reason is provided, [the] plaintiff may no longer rely on the presumption raised by the prima facie case, but may still prevail by showing, without the benefit of the presumption, that the employer's determination was in fact the result of racial

discrimination." *Holcomb*, 521 F.3d at 138; *see also Abdu-Brisson*, 239 F.3d at 469 ("Once the employer has articulated non-discriminatory reasons for the challenged employment actions, the presumption of discrimination vanishes and the burden shifts back to the plaintiff to come forward with evidence that the employer's proffered explanations were merely pretextual and that the actual motivations more likely than not were discriminatory."). Here, Plaintiff has failed to establish a prima facie case of discrimination regarding the April 14, 2014 conduct.

The prima facie case requirement does not require that the plaintiff provide "evidence sufficient to show discriminatory motivation," but rather creates "a temporary presumption of discriminatory motivation, shifting the burden of production to the employer and requiring the employer to come forward with its justification for the adverse employment action against the plaintiff." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 307 (2d Cir. 2015) (internal quotation marks omitted). The prima facie case is an evidentiary standard, and not a pleading requirement; therefore, a plaintiff need not *allege* a prima facie case to survive a motion to dismiss his discrimination claim. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) ("[A] complaint in an employment discrimination lawsuit [need not] contain specific facts establishing a prima facie case of discrimination . . . ."); *see also Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 719 (E.D.N.Y. 2015) ("A plaintiff alleging employment discrimination thus may withstand a motion to dismiss without pleading each element of a prima facie case." (italics omitted)).

Rather, the Second Circuit has explained "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. "The facts

required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination," but rather the facts "need only give plausible support to a minimal inference of discriminatory motive." *Id.*; *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against [him] at least in part for a discriminatory reason, and [he] may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination.") Courts making the plausibility determination should do so "mindful of the elusive nature of intentional discrimination," and the concomitant frequency by which plaintiffs must "rely on bits and pieces of information to support an inference of discrimination, i.e., a mosaic of intentional discrimination." *Vega*, 801 F.3d at 86–87 (italics and internal quotation marks omitted) (quoting *Gallagher v. Delaney*, 139 F.3d 338, 342 (2d Cir. 1998)).

Defendants do not dispute that Plaintiff has alleged that he is a member of a protected class, that he was qualified for his position, and that he suffered an adverse employment action. Instead, Defendants argue that Plaintiff has failed to demonstrate that the charges were motivated by racial discrimination. (*See* Defs.' Mem. 11.) The Court will therefore focus on whether there are sufficient allegations that give "plausible support to a minimal inference of discriminatory motivation" for the adverse actions. *Littlejohn*, 795 F.3d at 311.

"An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Id.* at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir.

14

2009)). Nothing in Plaintiff's Amended Complaint alludes to any direct racial component to any of Defendants' actions. Plaintiff instead appears to rely exclusively on allegations that white employees were afforded more favorable treatment than Plaintiff on account of Defendants' racial discrimination. "[A] plaintiff alleging discrimination based on disparate disciplinary treatment must demonstrate that [he] was subject to an adverse employment action and that a similarly situated employee not in the relevant protected group received better treatment." *Campbell v. Cty. of Onondaga*, No. 04-CV-1007, 2009 WL 3163498, at *15 (N.D.N.Y. Sept. 29, 2009) (internal quotation marks omitted). Furthermore, a "[p]laintiff must demonstrate that [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself]." *Jenkins v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 09-CV-12, 2009 WL 3682458, at *7 (S.D.N.Y. Oct. 29, 2009) (internal quotation marks omitted); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence 'must show [he] was similarly situated in all material respects to the individuals with whom [he] seeks to compare [himself].'") (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). Courts consider, among other factors, (1) "whether the plaintiff and those [he] maintains were similarly situated were subject to the same workplace standards"; and (2) "whether the conduct for which the employer imposed discipline was of comparable seriousness." *Jenkins*, 2009 WL 3682458, at *7; *see also Graham*, 230 F.3d at 40 ("[A] plaintiff must show that [his] co-employees were subject to the same performance evaluation and discipline standards.").

"[A]lthough, '[a]t the motion to dismiss stage, . . . evidence [of similarly situated comparators] is not necessary[,] . . . a court still must determine whether, based on a plaintiff's allegations in the complaint, it is plausible that a jury could ultimately determine that the comparators are similarly situated.'" *Weslowski v. Zugibe,* 14 F. Supp. 3d 295, 319 (S.D.N.Y.

15

2014); *see also Littlejohn*, 795 F.3d at 312 (affirming district court's decision granting motion to dismiss, noting that "the district court correctly concluded that adverse actions taken against employees who are not similarly situated cannot establish an inference of discrimination"); *McDowell v. North Shore-Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 569 (E.D.N.Y. 2012) ("With respect to a comparator analysis, all that a plaintiff is required to allege, at the pleadings stage, is that he is a member of a racial class, he was punished more severely than those outside of his racial class who were similarly situated in all material respects, and the severity of that punishment is related to his race . . . .").

While Plaintiff's burden is not a substantial one, the Court finds that Plaintiff's Amended Complaint does not satisfy it. As to the April 14, 2014 incident, Plaintiff appears to argue that white officers were never disciplined when participating in the conduct with which Plaintiff was charged on June 27, 2013 and September 10, 2013, (*See* Am. Compl. ¶¶ 14, 19), and thus racial discrimination must have occurred by implication as to the April 14, 2014 charge. However, Plaintiff makes no allegations in his Amended Complaint that white officers were treated more favorably as to the charge brought on April 14, 2014, which, "relat[e] to his participation in a movie which [D]efendants knew about for more than three years before propounding [the] disciplinary charges." (Am. Compl. ¶ 22.) Plaintiff offers no allegation about *any* comparators for the charge at issue.

Given that Plaintiff does not allege the existence of any comparators, let alone that any comparators engaged in the same or even similar misconduct of appearing in the unsanctioned movie, Plaintiff has not adequately pleaded allegations from which it is "plausible that a jury could ultimately determine that the comparators are similarly situated," *Weslowski,* 14 F. Supp. 3d at 319, and therefore has failed to adequately allege disparate treatment that could plausibly

16

support even a minimal inference of discrimination, *see, e.g.*, *Moultrie v. NYS Dep't of Corr. & Cmty. Supervision*, No. 13-CV-5138, 2015 WL 2151827, at *3 (S.D.N.Y. May 7, 2015) (granting a motion to dismiss because "[the] [p]laintiff [did] not allege[] that any of the proposed comparators engaged in misconduct of comparable seriousness"); *Jenkins*, 2009 WL 3682458, at *8 (dismissing the plaintiff's "claim based upon disparate disciplinary treatment" because the plaintiff's comparator "[was] not alleged to have engaged in all of the same misconduct as [the] [p]laintiff and [could not] be said to have been similarly situated in all material respects" (internal quotation marks omitted)); *see also Carter v. New Venture Gear, Inc.*, 310 F. App'x 454, 457 (2d Cir. 2009) (affirming grant of summary judgment where the plaintiff "provided no evidence that similarly situated black workers were punished differently than white coworkers for actual, comparable incidents").

Even if the Court considered the time-barred allegations of June 27, 2013, and September 10, 2013, Plaintiff would still fail to meet his minimal burden. Plaintiff alleges that, "[D]efendants . . . never lodged charges against white officers who have engaged in inappropriate contact at the jail with inmates," (Am. Compl. ¶ 14), and that "[t]he employer handled white officers charged with similar Facebook violations in a much more lenient manner than it treated [P]laintiff," (*id.* ¶ 19). However, the Amended Complaint does not identify any *particular* employee, of any race, who engaged in similar conduct with which Plaintiff was charged.[3] Such broad allegations, "do[] not satisfy Plaintiff's burden to allege that there were employees other than Plaintiff who fell into this category." *Weslowski,* 14 F. Supp. 3d at 320;

---

[3] In fact, Plaintiff does not allege that white officers ever have had inappropriate contact with inmates, only that Defendants never have lodged charges for such conduct. (*See* Am Compl. ¶ 14.) It may be the reason that no charges were brought is because there was no improper contact.

*see also T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.,* No. 11-CV-5133, 2012 WL 860367, at *6 (S.D.N.Y. Feb. 27, 2012) ("To state such a claim and to withstand a motion to dismiss, a plaintiff must allege specific examples of others similarly situated who were treated more favorably."); *Williams v. N.Y.C. Health & Hosp. Corp.*, No. 08-CV-4132, 2010 WL 2836356, at *4 (E.D.N.Y. July 16, 2010) (dismissing Title VII claim where plaintiff merely alleged that "[u]pon information and belief, males got paid when they were out sick but females [did] not," and failed to "specify any facts to support her claim that males were indeed treated differently than females in regard to sick-leave pay."). Thus, even as to those claims for which Plaintiff claims there were similarly situated employees treated more favorably, Plaintiff's Amended Complaint falls well short of plausibly stating a claim for disparate treatment. Accordingly, Plaintiff's disparate treatment claim is dismissed.

### III. Conclusion

For the foregoing reasons, Defendants' Motion is granted with respect to Plaintiff's hostile work environment and disparate treatment claims. As Plaintiff has already amended his Complaint in response to the Court's March 8, 2017 Opinion, those claims are dismissed with prejudice. *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (alterations and internal quotation marks omitted)).

Plaintiff's retaliation claim is unaffected by this Opinion and Order and the Court will hold a conference on January 30, 2018 at 3:15 P.M. to discuss the status of this case. The Clerk of Court is respectfully directed to terminate the pending Motion. (*See* Dkt. No. 40.)

SO ORDERED.

DATED: January 11, 2018
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE